FILED
2021 Jun-22 PM 04:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **CHRIS WILLIAM MALLARD,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No. 4:20-CV-00350-RDP |
| } | |
| **ANDREW SAUL, COMMISSIONER OF** } | |
| **SOCIAL SECURITY,** } | |
| } | |
| **Defendant.** } | |

## **MEMORANDUM OF DECISION**

Plaintiff Chris Mallard brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying his claims for disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). *See* 42 U.S.C. §§ 405(g), 1383(c). Based upon the court's review of the record and the briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed in part and reversed in part.

**I.     Proceedings Below**

Plaintiff filed applications for disability, DIB, and SSI on June 6, 2017, alleging he became disabled beginning on September 26, 2015. (R. 201-13). On July 7, 2017, Plaintiff's applications were denied initially and upon review. (R. 125-26). On July 17, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (R. 137). That request was granted, and a hearing was conducted on February 7, 2019, before ALJ J. Leland Brentley. (R. 33-55, 160-88, 189-90). Plaintiff, his attorney, and Vocational Expert ("VE") Tammie Donaldson were present at the hearing. (R. 34-35).

In the ALJ's decision, dated April 10, 2019, the ALJ determined that from September 26, 2015, Plaintiff had not been under a disability within the meaning of Sections 216(i), 223(d), or 1614(a)(3)(A) of the Act. (R. 18). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision on January 16, 2020, the ALJ's decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review. (R. 1-6).

At the time of the hearing, Plaintiff was 46 years old and had a 12th grade education. (R. 37-38). Plaintiff's past relevant work experience that consists of warehouse worker, fast food cook, and material handler. (R. 26, 231-37). Plaintiff alleges disability starting on September 26, 2015, as a result of degenerative disc disease, osteoarthritis, seizures, mini stroke, Irritable Bowel Syndrome ("IBS"), and asthma. (R. 91-92, 105-06). During his alleged period of disability, Plaintiff received relevant medical care from Cherokee Etowah Dekalb Mental Health Center ("CED"), Huntsville Hospital, Huntsville Hospital Neurological Associates ("Huntsville Neurology"), Gadsden Regional Medical Center, Dekalb Regional Medical Center, Gadsden Orthopedic, and Dekalb Neurology and Sleep Center. (R. 290-310, 311-42, 343-69, 783-95, 920-51, 971-97, 998-1011).

Plaintiff was seen at CED on January 13, 2016, where he reported he had a "[q]uick temper where he yells a lot . . . . mood swings and anger," was "irritable and moody . . . . [and] [g]rieving over his father's passing." (R. 299). The physician's evaluation of Plaintiff included the following impressions: depression, anxiety, having fair insight and judgment, inadequate attention/concentration, poor appetite, energy/motivation, and his condition was listed as stable. (*Id.*). Plaintiff returned approximately six months later on August 12, 2016, for another therapy session. (R. 294-97). Plaintiff conveyed that he had "some mild depression, mild anxiety . . . . [but was] doing well." (R. 297).

On February 5, 2016, Plaintiff was administered an EEG at Huntsville Hospital that was found to be of poor quality because of continuous muscle artifact. But no epileptiform activity or focal abnormalities were seen, no definite sleep stage identified, and hyperventilation was not performed. (R. 355).

On September 6, 2016, Plaintiff was seen at Huntsville Neurology for a six-month seizure disorder follow-up. (R. 315-22). Plaintiff complained of fatigue, back pain, joint pain, arthritis, seizures, tremors, vertigo, and memory loss. (R. 316-18). He further reported having a "few staring spells" but "seizures [and tremors] not as frequent." (*Id*.). Plaintiff listed Keppra as a prescribed medication with no side effects. (R. 316).

Six days later, on September 12, 2016, Plaintiff was admitted to Huntsville Hospital for left-sided weakness, numbness and tingling with tremors in his face, arm, and leg. (R. 784). At the time, Plaintiff reported that "his first seizure was a grand mal in 2001, now has seizures 2 days a week, normally two a day that are several partial seizures." (*Id*.). Plaintiff further added, "possibly 7 seizures activity yesterday that involved head shaking and left-sided tremors." (*Id*.). MRI results showed minimal nonspecific high T2 signal changes present within the frontal lobe white matter, no acute infarct or intracranial hemorrhage. (R. 788). Plaintiff's physician noted that "[w]ith respect to his left-sided weakness, nothing has made it better, nothing made it worse, and it is of very minimal severity." (R. 791).

Plaintiff went to Gadsden Regional Medical Center on February 2, 2017, for a follow-up to his low back pain. (R. 930-34). "Treatment options were reviewed: Conservative vs. Surgery," and Plaintiff was scheduled for back surgery (laminectomy, facetectomy, and foraminotomy) four

3

days later, on February 6, 2017.[1] (R. 933-36). The surgery revealed severe lumbar stenosis with multiple disk bulges, lumbar radiculopathy, sciatica, low back pain and osteoporosis. (R. 935).

On April 9, 2017, Plaintiff presented to DeKalb Regional Medical Center Emergency Department with complaints of leg pain. (R. 897-99). An imaging report noted degenerative changes. (*Id.*). Plaintiff was diagnosed with a small avulsion fracture of the right acetabular rim hip area and told to follow up with an orthopedic. (R. 900). On May 4, 2017, Plaintiff returned to Gadsden Regional Medical Center for an x-ray of the lumbar spine showing decompression laminectomy, L2 through L5, and disk space narrowing, L3 and L5. (R. 925).

In May 2018, Plaintiff developed a staph infection which required a wound vac and lumbar spine irrigation and debridement surgery on May 25, 2018. (R. 998, 1000, 1008). Plaintiff was seen at Gadsden Orthopedic on July 2, 2018, for his post-operation check. (R. 998). Plaintiff reported "doing well" and his "lumbar spine pain [was] 5 out of 10." (*Id.*). The impression noted was "low back pain." (*Id.*). Plaintiff returned on July 9, 2018, for another follow up, where it was noted that he was "doing well" and his pain was rated a 6 out of 10. (R. 1000).

On August 21, 2018, Plaintiff had an appointment at DeKalb Neurology and Sleep Center where he was diagnosed with obstructive sleep apnea disorder and prescribed a CPAP machine. (R. 981-83). Plaintiff returned for his follow up appointment on November 14, 2018, stating he was "doing well with his machine." (R. 971).

## II. ALJ Decision

The Act "defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

---

[1] The ALJ referred to this as "elective lumbar spine surgery." (R. 25).

death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). A claimant can be determined to be disabled if they have a severe impairment that makes them "unable to do [their] past relevant work or any other substantial gainful work that exists in the national economy." *Id*. However, in circumstances where the claimant's severe impairment "does not meet or medically equal" a listing in 20 C.F.R. § 404, Subpart P, Appendix 1, the court "will assess [the claimant's] residual functional capacity as provided in 20 C.F.R. §§ 416.920(e) and 416.945." 20 C.F.R. § 416.905(a). This will be used "to determine if [the claimant] can do . . . past relevant work." *Id*. If the claimant cannot perform past relevant work, "vocational factors of age, education, and work experience" are used "to determine if [the claimant] can do other work." *Id*.

Disability is determined under a five-step test. 20 C.F.R. § 404.1520; *see* § 416.905(a). First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i),(b). Substantial work activity is defined as "work activity that involves doing significant physical or mental activities," while gainful activity refers to "work activity . . . for pay or profit." 20 C.F.R. § 404.1572(a)-(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the ALJ will find the claimant "not disabled regardless of [] medical condition or [] age, education, and work experience." 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has "a severe medically determinable physical or mental impairment . . . [that] meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 404.1520(a)(ii). Absent a severe impairment, the ALJ "will find that [the claimant is] not disabled." *Id*. Third, the ALJ will "also consider the medical severity of [the claimant's]

5

impairment(s)." 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment "meets or equals one of [the] listings in appendix 1 of this subpart and meets the duration requirement," then the ALJ will find that the claimant is disabled. *Id*.

At this point in the five-step test, if the ALJ has determined the claimant is not disabled, the ALJ when then determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4). RFC refers to "the most the claimant can still do despite . . . limitations . . . . based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(1), (3); *see* § 404.1520(a)(4)(e). In the fourth step, using the RFC, the ALJ will look at the claimant's past relevant work, and if the claimant "can still do [] past relevant work, [the ALJ] will find that [the claimant is] not disabled." 20 C.F.R. § 404.1520(a)(4)(iv), (f), (h). If the ALJ has not found the claimant to be disabled in step four, the ALJ will move on to the fifth and final step. 20 C.F.R. § 404.1520(a)(4).

At step five the burden of proof shifts to the ALJ who "must provide evidence about the existence of work in the national economy that the claimant can do given the claimant's [RFC] . . . age, education, and work experience." 20 C.F.R. §§ 404.1560(c), 404.1512(b)(3).

Here, the ALJ determined that: (1) Plaintiff had not engaged in substantial gainful activity since the onset date of his alleged disability, September 26, 2015; (2) Plaintiff has the following severe impairments: sleep apnea, degenerative disc disease lumbar spine with radiculopathy, history of seizures, history of left side weakness, asthma, osteoarthritis, cervicalgia, scoliosis, depression and anxiety that significantly limit his ability to perform basic work activities; (3) Plaintiff's impairments or combination of impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1: (a) Plaintiff has the residual

functional capacity to perform light work, as defined in 20 C.F.R. § 404.1567(b), with the exception of occasional climbing or ramps and stairs; unable to climb ladders, ropes and scaffolding; occasional balancing, stooping, kneeling, crouching and crawling; avoid concentrated exposure to extreme cold and vibration; avoid unprotected heights and poorly ventilated areas; (b) but he is able to understand, remember, and apply simple and detailed instructions and concentrate and persist for extended periods in order to complete simple and detailed work tasks with routine supervision; and able to maintain superficial work relationship and respond appropriately to others and adapt to a routine work setting; (4) Plaintiff is unable to perform any past relevant work; and (5) there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 18-28). Therefore, the ALJ determined Plaintiff was not disabled as defined by the Act and therefore not entitled to disability, DIB, or SSI. (R. 28).

### III.    Plaintiff's Argument for Reversal

Plaintiff presents two arguments in support of reversal. First, he contends the ALJ's discussion and consideration of his non-convulsive seizures was inadequate and the ALJ erred in finding that his seizures did not meet the requirements of Listing 11.02. (Doc. # 16 at 11, 14). In the alternative, Plaintiff asserts the ALJ erred in finding the effect of the combination of his impairments did not cause him to be disabled because the ALJ failed to make specific and well-articulated findings in this regard. (*Id*. at 14). As a result, Plaintiff argues the ALJ's findings in step three regarding his impairments are not supported by substantial evidence. (*Id*.). Plaintiff further urges that the record was not properly developed regarding his severe impairment(s) meeting the requirements of Listing 11.02,[2] claiming the ALJ erred by not considering whether

---

[2] Plaintiff's original complaint cites Listings 11.02 and 11.03. (Doc. # 12 at 11). These listing were revised and consolidated September 29, 2016, under 20 C.F.R. § 404, Part A2, Subpart P, Appendix 1, Section 11.02.

he has alteration of awareness, postictal manifestations, or significant interference with activity during the day. (*Id*. at 13).

Second, Plaintiff contends that the ALJ erred by failing to include his frequent seizures in the hypothetical questions posed to the vocational expert and incorrectly concluded in step five that other jobs exist in the economy that he could perform. (Doc. # 12 at 16). Plaintiff notes that the ALJ is required to pose hypothetical questions regarding all of his impairments. (*Id*.) (citing *Winschel v. Schweiker*, 631 F.3d 1176 (11th. Cir. 2011)). Plaintiff asserts that if the ALJ had included questions about the frequency of his seizures, "[a] VE will usually agree that [an individual] cannot be off task more than 15% of the workday (outside normal work breaks) and still be able to work." (*Id.* at 16). If the ALJ had determined Plaintiff cannot make an adjustment to other work, the ALJ would have found that he is disabled. 20 C.F.R. § 404.1520(a)(4)(v), (g).

## IV. Standard of Review

On appeal, the court will "review *de novo* the legal principles upon which the Commissioner's decision is based." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Judicial "review of the Commissioner's decision is limited to an inquiry into whether there is

---

Plaintiff's complaint was filed in June 2017, well after the listings were consolidated. Therefore, only Listing 11.02 is applicable.

Plaintiff uses the obsolete language of non-convulsive seizures in Listing 11.03, focusing on the language "occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment." 20 C.F.R. § 404, Subpart P, Appendix 1, Section 11.03 (effective until September 28, 2016). The 2016 revision distinguishes between generalized tonic-clonic seizures and dyscognitive seizures. 20 C.F.R. § 404, Part A2, Subpart P, Appendix 1, Section 11.02.

Based on Plaintiff's complaint, the ALJ determined, and this court agrees, that the appropriate parallel of non-convulsive in the revised Listing 11.02 would be dyscognitive. Dyscognitive seizures are those "occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment . . . or occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment; and marked limitation in one of the following: 1) Physical functioning; or 2) Understanding, remembering, or applying information; or 3) Interacting with others; or 4) Concentrating, persisting, or maintaining pace; or 5) Adapting or managing oneself." 20 C.F.R. § 404, Part A2, Subpart P, Appendix 1, Section 11.02.

substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see* 42 U.S.C. § 405(g). When reviewing factual findings, the Commissioner's "findings are conclusive if they are supported by substantial evidence." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citation omitted); *see* 42 U.S.C. § 405(g). Substantial evidence is explained as "the Commissioner's factual findings [being] more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see Moore*, 405 F.3d at 1211. It is important to note that "[e]ven if the evidence preponderates against the Commissioner's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin*, 894 F.2d at 1529. The court's judicial review does not include "deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Moore*, 405 F.3d at 1211.

**V.     Discussion**

Plaintiff's first argument, centers around step three of the disability analysis, primarily his seizures meeting Listing 11.02, and in the alternative, the combination of his severe impairments making him disabled. Plaintiff's second argument is centered around step five of the disability analysis and asserts that the ALJ did not include all of his impairments in his hypothetical questions to the VE and, consequently, his ability to perform other jobs in the economy was incorrectly determined. The court addresses each argument in turn.

9

1. **Whether Substantial Evidence Supports, and the Record Was Properly Developed in Connection with, the ALJ's Findings at Step Three that Plaintiff's Impairments Did Not Equal a Disability**

Plaintiff claims the ALJ's discussion, consideration, and subsequent determination that his seizures did not meet the listings is not supported by substantial evidence. In addition, he contends the ALJ did not properly the develop the record regarding Plaintiff's impairments. Alternatively, Plaintiff argues, when assessing the effect of his impairments causing his disability, the ALJ did not meet his duty to make specific and well-articulated findings. These arguments are addressed below.

   a. **Plaintiff's severe impairments, or combination of impairments, did not meet Listing 11.02, or cause him to be disabled**

The issue in relation to this argument is whether the record supports Plaintiff's frequency of seizures meeting Listing 11.02, alternatively, if the ALJ provided specific and well-articulated findings as to the effect of Plaintiff's combined impairments, and whether the ALJ erroneously determined the combination of impairments did not cause Plaintiff to be disabled.[3]

Even if this court finds substantial evidence "contrary to the findings of the ALJ, and [this court] may have taken a different view of it as a factfinder . . . . if there is substantially supportive evidence, the findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 229-30 (11th Cir. 1991). )). As noted above, 'substantial evidence' is more than a scintilla, but less than a preponderance. *Martin*, 894 F.2d at 1529. The evidence is substantial if a reasonable person presented with the evidence the ALJ has used, would accept that evidence as adequate to support

---

[3] In its Memorandum in Support, the Government states Plaintiff's complaint is regarding the combination of Plaintiff's impairments and *assessing his RFC*, instead of his actual claim which is regarding the combination of his impairments and *assessing his disability*. (Doc. # 18 at 2, 16). Although that may be the case, that argument has no bearing on this court's determination of Plaintiff claiming the ALJ erroneously determined his combination of impairments did not cause him to be disabled.

the ALJ's findings. *See id.*; *see Moore*, 405 F.3d at 1211. This same standard applies to the ALJ findings on the effects of the claimant's combined impairments causing him to have a disability. *See Barron*, 924 F.2d at 229-30.

If a claimant has alleged a multitude of impairments, "a claim for [SSI] may lie even though none of the impairments, considered individually, is disabling" but "[t]he ALJ must 'make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled.'" *Reliford v. Barnhart*, 157 F. App'x 194, 196 (11th Cir. 2005) (quoting *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987)). The "ALJ's finding regarding a claimant's 'impairment or combination of impairments' establish[es] that the ALJ had indeed considered the impact of the claimant's combined impairments." *Id.* (citing *Wilson*, 284 F.3d at 1224-25) (holding the ALJ stating medical evidence established plaintiff had severe impairments, "but that he did not have an impairment *or combination of impairments* listed in, or medically equal to" the listings constitute evidence ALJ considered combined effects of plaintiff's impairments). If an "ALJ specifically state[s] that [the claimant] did not have an 'impairment, individually or in combination' that met one of the listed impairments in evaluating step three of the process . . . . [t]hat statement shows that the ALJ considered the combined effects of [the claimant's] impairments during [] evaluation." *Hutchinson v. Astrue*, 408 F. App'x 324, 327 (11th Cir. 2011) (citing *Jones v. Dept. of Health and Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991)).

Here, Plaintiff's primary argument is that the record contains sufficient evidence supporting a finding that his seizures meet the Listing 11.02 frequency requirement. (Pl.'s Mem. 14). But the question on appellate review is not how this court would decide that question. Rather,

the issue is whether substantial evidence supports the ALJ's determination that Plaintiff's seizures did not occur at least once a week for at least three consecutive months despite adherence to prescribed treatment. (R. 21-26, 37-51, 316, 784, 627, 665-66, 711, 748, 325, 855). (Doc. # 12 at 12-13; Doc. # 18 at 11-13). The record evidence contains no medical records that explicitly indicate Plaintiff was having seizures once a week for three consecutive months. (*See id.*). Both parties point to Plaintiff's visit to Huntsville Neurology on September 6, 2016, and his visit to the ER on September 12, 2016. (Doc. # 12 at 12-13; Doc. # 18 at 11-13; R. 316, 784).

Reviewing the record, the discussions from Plaintiff's medical visits pertain more to his seizure activity in the days leading up to the applicable visit and his reported improvements, not over a span of at least three consecutive months showing he was having seizures at least once a week. (R. 316, 784, 627, 655, 711, 748, 325, 855, 827). Plaintiff's 2016 medical records from February, March, June, and August addressing his seizure activity contain substantial evidence supporting the ALJ's finding that Plaintiff did not have seizures every week for three consecutive months. (*Id.*). Even if this court, on first impression, would have found that Plaintiff's impairments, or combination thereof, meet Listing 11.02 requirements, this court cannot overturn the ALJ's finding that Plaintiff's impairments did not meet the listing because the ALJ's finding is supported by substantial evidence. *See Barron*, 924 F.2d at 229-30.

Turning to Plaintiff's alternative argument regarding the effect of the combination of impairments in the step three analysis, the ALJ stated Plaintiff "does not have an impairment *or combination of impairments* that meets or medically equals the severity of one of the listed impairments." (R. 21) (emphasis added). It is well established this statement shows the ALJ

considered the combined effects of Plaintiff's impairments. *See Reliford*, 157 F. App'x at 196; *see Hutchinson*, 408 F. App'x at 327; *see Jones*, 941 F.3d at 1533.

There is substantial evidence in the record supporting the ALJ's finding that Plaintiff's impairments did not meet the Listing 11.02. The ALJ met his duty of providing specific and well-articulated findings as to the effect of the combination of impairments and, as a result, there is substantial evidence supporting the ALJ's finding the effect of the combination of Plaintiff's impairments did not cause the Plaintiff to be disabled.

> **b.  The ALJ Properly Developed the Record in Determining that Plaintiff's impairments did not meet Listing 11.02**

Additionally, Plaintiff argues the "record does not presently contain sufficient evidence to meet the seizure listings", in order "to fully and fairly develop the record, with respect to [his] eligibility for benefits under Listing 11.03 [sic]." (Doc. # 12 at 14). Therefore, "[t]he case should be reversed and remanded to require the ALJ to order a *further* medical evaluation of [his] seizure condition." (*Id.*) (emphasis added).

While "the ALJ has a basic duty to develop a full and fair record, . . . . the claimant [nevertheless] bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Even though "[o]ur [circuit's] published cases do not explicitly say what standard of review we use when analyzing a failure-to-develop-the-record claim, . . . we seem to apply a *de novo* standard." *Brock v. Comm'r, Soc. Sec. Admin.*, 758 F. App'x 745, 748 (11th Cir. 2018) (citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)) (internal quotation marks omitted). Therefore, "[w]hen deciding whether a case should be remanded so the record may be further developed . . . . '[the court is] guided by whether the record reveals evidentiary gaps which result

13

in unfairness or clear prejudice.'" *Id.* (citing *Brown*, 44 F.3d at 935). This means, "there must be a showing of prejudice before [the court] will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the ALJ for further development of the record." *Id.* "To show prejudice, the claimant must show that 'the ALJ did not have all of the relevant evidence before him in the record, . . . or that the ALJ did not consider all of the evidence in the record in reaching his decisions." *Id.* (citing *Kelley v. Heckler*, 761 F.2d 1538, 1240 (11th Cir. 1985)).

However, "there is no prejudice when there is 'sufficient evidence' in the record that allows the ALJ 'to make an informed decision." *Brock*, 758 F. App'x at 748 (citing *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007)). Specifically, at step three of the analysis, the ALJ must consider the listings, but "is not required [to] mechanically recite the evidence leading to [the] determination." *Bailey v. Soc. Sec. Admin., Comm'r*, 782 F. App'x 838, 841-42 (11th Cir. 2019) (quoting *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986)). In addition the ALJ "may order a consultative examination where warranted," but "is *not required* to order a consultative examination unless the record establishes that such an examination is necessary to enable the [ALJ] to render a decision." *Ford v. Sec'y of Health and Hum. Serv.*, 659 F.3d 66, 69 (5th Cir. 1981) (emphasis added). So, the ALJ will "'normally require' a consultative examination only when necessary information is not in the record and cannot be obtained from the claimant's treating medical sources or other medical sources." *Doughty*, 245 F.3d at 1280-81 (citing § 404.1519a(b)).

Although Plaintiff does not argue the record is incomplete, Plaintiff seems to assert that the ALJ was required to order consultative examination. *See also* 20 C.F.R. § 404.1519a(a) ("If

we cannot get the information we need from your medical sources, we may decide to purchase a consultative examination."). The court disagrees. The ALJ had sufficient information available in the medical records when determining whether or not Plaintiff's seizures met the listing requirements. Plaintiff has set forth no reasons (and this court can think of none) as to why ordering additional medical evaluations would give the ALJ any additional information, not already in the record. *See Doughty*, 245 F.3d at 1280-81.

This court concludes the requested medical records provide sufficient support for the ALJ's findings, and they reveal no evidentiary gaps which result in unfairness or clear prejudice. The ALJ fully developed the record with respect to Plaintiff's eligibility for benefits under Listing 11.02 and was not required to order further medical evaluation of Plaintiff's seizure condition.

2. **Whether the ALJ's Failure to Include the Frequency of Plaintiff's Seizures, When Posing Questions to the VE, is a Lack of Substantial Evidence Resulting in an Incorrect Determination that There Were Other Jobs Plaintiff Could Perform in the Economy**

Finally, Plaintiff contends the ALJ's failure to include his seizures in the hypothetical questions to the VE means the ALJ failed to include all of Plaintiff's impairments. Specifically, Plaintiff argues the frequency of Plaintiff's seizures would cause him to be off task more than 15% of the workday. Plaintiff further asserts that if those traits had been included in the question posed to the VE, that could result in an opinion that supports a finding that he is not able to perform other work and, as a result, he would have been determined to be disabled.

After step four, if the ALJ determined a claimant cannot perform their previous jobs, the ALJ will then determine whether the claimant can perform other work. 20 C.F.R. §§ 404.1520(a)(4)(v), (g). The ALJ uses "vocational experts and other specialists to assist with step five determinations." *Good v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280-81 (11th Cir. 2020)

15

(citing 20 C.F.R. § 416.966(e)). When assessing "whether jobs exist in the national economy in significant numbers . . . the ALJ can consider both jobs data drawn from the DOT as well as from the testimony of the VE in making this determination."[4] *Id.* (quoting *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1360 (11th Cir. 2018)). If the ALJ wishes to use the VE's testimony as "substantial evidence, the ALJ must pose a hypothetical question which comprises of all of the claimant's impairments."[5] *Wilson*, 284 F.3d at 1227.

"Where the hypothetical question posed by the ALJ does not comprehensively describe the claimant's impairments, the ALJ's denial of DIB or SSI, if based significantly on the VE's testimony, is not supported by substantial evidence." *Jones v. Comm'r of Soc. Sec.*, 492 F. App'x 70, 72 (11th Cir. 2012) (citing *Pendley v. Heckler*, 767 F.2d 561, 1562-63 (11th Cir. 1985)). However, "[a]n ALJ's errors in conducting the five step evaluation process may be harmless if they do not prejudice the claimant." *Jones*, 492 F. App'x at 72 (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

A hypothetical question to the VE is inadequate if it does not include all of the claimant's limitations and if "[the court] cannot assume that the [VE] would have answered in a similar manner had the ALJ instructed [the VE] to consider all of the [claimant's] severe impairments." *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985). However, "[t]he hypothetical need only include 'the claimant's impairments,' not each and every symptom of the claimant." *Ingram*, 496

---

[4] It is important to note that a VE's testimony is not necessarily in conflict with the DOT if the DOT does not address the subject of the VE's testimony. *See Christmas v. Comm'r of Soc. Sec.*, 791 F. App'x 854, 857 (11th Cir. 2019).

[5] As a point of clarification, case law consistently requires the ALJ to include all impairments in the hypothetical question posed to the VE. Defendant specifically states in its Memorandum in Support, "[s]ubstantial evidence supports the ALJ's assessment of Plaintiff's RFC, and the ALJ's hypothetical questions to the VE included all of the limitations in the ALJ's RFC finding." (Doc. # 18). To be clear, the ALJ must ask hypothetical questions regarding *all* of the Plaintiff's impairments, not just those found in the RFC analysis. *See Wilson*, 284 F.3d at 1227.

F.3d at 1270 (citing *Wilson*, 284 F.3d at 1227). Likewise, the ALJ does not have "to include limitations in the hypothetical that were properly rejected as unsupported." *Allen v. Barnhart*, 174 F. App'x 497, 499 (11th Cir. 2006) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)). If the characteristics alleged by the claimant are not supported by his medical records or have been alleviated by medication, the ALJ need not include those resulting limitations in the hypotheticals posed to the VE. *Allen*, 174 F. App'x at 499

However, if the ALJ determines that a claimant's mental impairments "caused a moderate limitation in maintaining concentration, persistence, and pace . . . . [b]ut the ALJ did not indicate that medical evidence suggested [the claimant's] ability to work was unaffected by this limitation nor did [the ALJ] otherwise implicitly account for the limitation in the hypothetical," the circuit has held that "the [VE's] testimony is not 'substantial evidence' and cannot support the ALJ's conclusion that [the plaintiff] could perform significant numbers of jobs in the national economy." *Winschel*, 631 F.3d at 1181. In such a case, because of a lack of substantial evidence, "[o]n remand, the ALJ must pose a hypothetical question to the [VE] that specifically accounts for [the plaintiff's] moderate limitation in maintaining concentration, persistence, and pace." *Id*. Subsequently, the ALJ's step five analysis does not require the plaintiff prove his limitations to disabling degree. *See id*.; *see Pendley*, 767 F.2d at 1563.

In this case, the ALJ based his step five determination on the VE's testimony. (R. 28). Meaning, the ALJ viewed the VE's testimony as substantial evidence of other jobs in the national economy Plaintiff can perform, and as a result, the hypothetical questions posed by the ALJ to the VE had to include all of Plaintiff's impairments. *See Jones*, 492 F. App'x at 72; *see Wilson*, 284 F.3d at 1227. Plaintiff argues the ALJ was required to include Plaintiff's frequency of seizures in

17

the hypotheticals, despite the requirement that an ALJ must include *all* of a claimant's impairments. (Doc. # 12 at 16).

The ALJ did not pose any hypothetical questions regarding the frequency of Plaintiff's seizures or Plaintiff's moderate limitations, nor did the ALJ's questions to the VE include Plaintiff's moderate limitations related to his ability to concentrate, persist, or maintain pace. (R. 51-53)[6]. The ALJ determined that "Plaintiff failed to prove that his seizures would cause him to be off task to a disabling degree."[7] (Doc. # 18 at 19). However, at step five, Plaintiff was not required to show that he had limitations to disabling degree. *See Wilson*, 284 F.3d at 1227. Because the ALJ relied on the VE's testimony to determine if Plaintiff could perform other jobs in the national economy, the ALJ was required to pose questions that comprehensively described Plaintiff's impairments. *See Jones*, 492 F. App'x at 72.

At step three, the ALJ found "[Plaintiff]'s ability to concentrate, persist, or maintain pace" is marked by "moderate limitations." (*Id.*). The ALJ did not indicate the medical evidence suggests Plaintiff was unaffected by his limitation. (R. 22-24). In fact, Plaintiff testified he is indeed affected by this limitation due to his mental impairments. (R. 47-51). However, in his RFC analysis, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence in the record," but did not adjust or negate his finding that Plaintiff had a moderate limitation in his ability to concentrate, persist, or maintain pace. (R. 22-24). The hypothetical questions posed to the VE did not fully account for

---

[6] The ALJ claims "Plaintiff failed to prove that his seizures would cause him to be off task to a disabling degree." (ALJ's Mem. 19). However, in step five, Plaintiff did not have to prove he had limitations to a disabling degree, and the ALJ is still required to include all of Plaintiff's impairments. *See Wilson*, 284 F.3d at 1227.

[7] Plaintiff does not explicitly state his argument is regarding his moderate limitations in ability to concentrate, persist or maintain pace but instead says "off task more than 15% of the workday." (Doc. # 16).

Plaintiff's limitations. (R. 51-53). There is nothing to indicate the VE would have still answered the hypothetical in the same manner had Plaintiff's moderate limitation been included.

In fact, in response to the ALJ's last hypothetical related to an individual consistently missing two days per month from work, the VE testified that this limitation "would preclude the samples [of the jobs the VE] gave as well as any other competitive work." (R. 54). While this inquiry does not speak directly to Plaintiff's moderate limitation regarding his ability to concentrate, persist, or maintain pace, it does highlight that the court cannot assume to know that the VE would have answered in a similar manner had the ALJ instructed the VE to consider Plaintiff's moderate impairment to his ability to concentrate, persist, or maintain pace. *See Pendley*, 767 F.2d at 1563.

Therefore, based on the VE's testimony, the ALJ's denial of disability, DIB, and SSI benefits, is not supported by substantial evidence, and cannot support the ALJ's conclusion the Plaintiff could perform other jobs in the national economy.

## VI. Conclusion

The ALJ's determination that Plaintiff's impairments did not meet Listing 11.02 requirements and Plaintiff's combination of impairments did not cause him to be disabled, is supported by substantial evidence and the proper legal standards were applied in reaching those determinations. This court also finds that the ALJ properly developed the record with respect to these issues.

However, because the ALJ failed to include or otherwise implicitly account for all of Plaintiff's impairments in the hypotheticals posed to the VE in step five, the ALJ's conclusion that Plaintiff could perform significant numbers of jobs in the national economy is not supported by

substantial evidence. Therefore, the ALJ's final decision is due to be affirmed in part and remanded in part, with instructions for the ALJ to pose a hypothetical question to the VE that specifically accounts for Plaintiff's moderate limitation in his ability to concentrate, persist, or maintain pace.

**DONE** and **ORDERED** this June 22, 2021.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE